IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HEINZ HOFMANN and THOMAS BUCKLEY,

    Plaintiffs,

    v.

THE CITY AND COUNTY OF SAN
FRANCISCO; THE SAN FRANCISCO
POLICE DEPARTMENT (SFPD); GEORGE
GASCON, individually and in his
official capacity as Chief of
Police, SFPD; and JEFFREY GODOWN,
individually and in his official
capacity as Chief of Police,
SFPD,

    Defendants.
_____/

No. C 11-4016 CW

ORDER GRANTING IN
PART, WITH LEAVE
TO AMEND,
DEFENDANTS' MOTION
TO DISMISS and
DENYING THEIR
MOTION TO STRIKE
(Docket No. 10)

United States District Court
For the Northern District of California

    Plaintiffs Heinz Hofmann and Thomas Buckley have filed suit against the City and County of San Francisco (City), the San Francisco Police Department (SFPD) and former SFPD Chiefs of Police George Gascón and Jeffery Godown.  Plaintiffs allege five causes of action, including violations of federal law under 42 U.S.C. §§ 1981, 1983, 1985 and Title VII, and a violation of California's Fair Employment and Housing Act.  Defendants have moved to dismiss Plaintiffs' federal claims under §§ 1981, 1983 and 1985, pursuant to Federal Rule of Civil Procedure 12(b)(6).  In addition, Defendants move to strike immaterial and impertinent allegations under Federal Rule of Civil Procedure 12(f).  Having considered all of the parties' submissions and oral argument, the Court grants in part Defendants' motion to dismiss and denies

their motion to strike.  Docket No. 10.  The Court grants leave to amend.

BACKGROUND

Buckley and Hofmann allege the following facts in their complaint.  Both are white, male Lieutenants in the San Francisco Police Department.  In 2007 Buckley and Hofmann took the City's examination for the position of Police Captain.  A list was created, ranking all eligible candidates for Captain based on examination scores alone.  Buckley's and Hofmann's scores ranked them at sixteen and twenty, respectively, on the eligible list.

The City announced the "Rule of 5 Scores" as the "certification rule"[1] for selection from this list of candidates eligible for appointment to the position of Captain.  Under the Rule of 5 Scores, the Human Resources Department certifies to the appointing officer the names of the eligible candidates with the five highest scores on the list who are available for appointment.  According to the announcement, the Rule of 5 Scores was to be used for the first eleven hiring selections, reaching candidates through rank fifteen.

The City also announced that it would use an additional method, which Plaintiffs refer to as "banding," to promote

---

[1] The complaint does not explain the terms "certification rule" and "Rule of 5 Scores," but these terms are described in Schiff v. City and County of San Francisco, 816 F. Supp. 2d 798, 804 n.1 (N.D. Cal. 2011) (citing S.F. Civ. Serv. Com. R. 213, et seq.).

United States District Court
For the Northern District of California

candidates to the position of Captain.[2]  Plaintiffs claim that the City decided to apply the banding method to make promotion decisions because no African Americans or Asian Americans were reachable under the Rule of 5 Scores applied to the 2007 list.  A "band" was created within which the differences in the test scores of applicants for the Captain's position were considered statistically insignificant.  "The band is a statistically derived confidence range that is applied to the examination results." Compl. ¶ 11 (quoting <u>Officers for Justice v. Civil Service Comm'n of the City and Cnty. of San Francisco</u>, 979 F.2d 721, 722 (9th Cir. 1992)).  The City was to select candidates within the band for promotion based on "secondary criteria" including education, training, assignments, disciplinary history, and commendations and awards.  The complaint alleges that the City used banding to promote a higher percentage of minority officers than would be promoted under a strict ranking system using test scores alone.

The City originally used the banding method to comply with a consent decree arising from a 1973 class action, <u>Officers for Justice v. Civil Service Commission of the City and County of San Francisco</u>, C 73-0657.  In that case an association of police

---

[2] The dates when the City announced its use of the Rule of 5 Scores and the banding method were not plead in the complaint, but Defendants submit in their brief that they were announced in January 2008.  Mot. to Dismiss at 3:18, 7:22.  Plaintiffs assert in their opposition brief that the City announced in December 2007 that it would adopt banding for the Captain's list, Opp. at 7:2-4.  They do not assert when the use of the Rule of 5 Scores was announced.

officers sued City officials, alleging race and sex discrimination in connection with SFPD's hiring and promotion procedures.  The litigation resulted in a consent decree which ended in 1998.[3]

With respect to the 2007 list at issue here, a band of forty-five points was applied, starting with rank number sixteen.  Thus, eligible candidates on the list who ranked lower than sixteen but had a score within forty-five points of the score for the candidate ranked sixteen were evaluated for promotion using the secondary criteria.  When making the promotions from the list using the band, the City did not promote Plaintiffs Buckley and Hofmann and promoted three African Americans--Charlie Orkes, ranked number twenty, John Sanford, ranked number twenty-one, and Valeria Agard, ranked number twenty-six--as well as two Asian Americans--Garret Tom, ranked number twenty-three, and Curtis Lum, ranked number twenty-eight.  The complaint does not allege the dates when these promotions were made.  The City's 2007 list expired on January 14, 2011.  Plaintiffs assert that they were

_____

[3] The consent decree was entered in 1979 and affirmed by the Ninth Circuit in 1982.  Officers for Justice v. Civil Service Comm'n. of City and Cnty. of San Francisco, 688 F.2d 615, 636 (9th Cir. 1982).  The decree, provided in full in the appendix of the district court's approval order, 473 F. Supp. 801, 809-30 (1979), required the City to employ good faith efforts to achieve particular goals for the employment of women and minorities in the police department and prohibited the use of methods of selection that had an adverse impact on women and minorities unless the City proved they were valid under the Uniform Guidelines on Employee Selection Procedures, 28 C.F.R. § 1607.  The City also promised to refrain from discriminating at any time on the basis of race, sex, or national origin in hiring, promotion and other employment related activities.

denied promotions in favor of lower-scoring and less qualified people of color because Plaintiffs are white and Defendants sought to promote African Americans and Asian Americans from the 2007 list.

Apart from the banding method, Plaintiffs claim a "longstanding custom and practice in discriminating against white males in SFPD promotions to the rank of Sergeant, Lieutenant, and Captain." Compl. ¶ 14. Plaintiffs allege, as an example, an incident in 1984 when the City re-scored an examination administered for candidates for Inspector and Sergeant positions. As a result of the re-scoring, a larger number of minorities ranked in the top group. The Ninth Circuit held that the City's decision to re-score the examination was arbitrary and did not comply with the consent decree because it discriminated against candidates on the basis of race and sex. San Francisco Police Officers' Ass'n v. City and Cnty. of San Francisco, 869 F.2d 1182, 1184 (1988).

As an additional example of the City's custom and practice of discrimination, Plaintiffs allege that the City applied the banding method to the list of candidates for a Lieutenant position, which was generated based on the City's examination administered in 2000. All five African American candidates within a certain band were promoted as a result. The promotions spurred three separate race discrimination lawsuits, which were settled in

2006.[4]  During discovery, two Deputy Chiefs of Police testified that the five African American candidates were promoted under a deal negotiated by Chief Fred Lau, Officers for Justice and the San Francisco Police Officers' Association.

Finally, Plaintiffs claim that Gascón and Godown intentionally discriminated against them based on their race by not selecting them for promotion from within the band.  Plaintiffs allege that they were objectively better qualified for the position of Captain, based on the secondary criteria, than the non-whites who were selected.

ANALYSIS

I. Dismissal of Claims Against SFPD

Defendants seek dismissal of the claims against SFPD because it is not an independent legal entity under the City Charter.

A police department's capacity to be sued in federal court is determined by California law.  Shaw v. State of Cal. Dept. of Alcoholic Beverage Control, 788 F.2d 600, 604 (9th Cir. 1986) (citing Federal Rule of Civil Procedure 17(b)).  As explained in Shaw, California Government Code section 945 provides, "A public entity may sue and be sued."  Id.  Under California Government Code section 811.2, a "public entity" means "the state, the Regents of the University of California, the Trustees of the

_____

[4] The complaint cites Schiff v. City and County of San Francisco, 2007 WL 2301773, *2 (N.D. Cal.), which describes a $1.5 million settlement of three actions that challenged promotions made pursuant to examinations administered in 1999 and 1993.

United States District Court
For the Northern District of California

California State University and the California State University, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State." Accordingly, a California municipal police department may be subject to suit in federal court. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 624 n.2 (9th Cir. 1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations.") (citing, among other authorities, Shaw, 788 F.2d at 605). However, section 4.100 of the San Francisco City Charter states that "the executive branch of the City and County shall be composed of departments, appointive boards, commissions and other units of government." Section 1.101 states that the "City and County may appear, sue and defend in all courts in all matters and proceedings." Thus, while civil liability may attach based on the SFPD's actions, the City has established by charter that it is the authority to appear and defend against such suits and the SFPD has no independent legal existence apart from the City. Schiff v. City and Cnty. of San Francisco, 2009 WL 1011702, *2 (N.D. Cal.).

Thus, the City's motion to dismiss Plaintiffs' claims against SFPD is granted. The claims against SFPD are deemed to be claims against the City.

II. Section 1983 Claim

Defendants seek dismissal of Plaintiffs' § 1983 cause of action against the City and the former Chiefs in their official

7

capacities.  Suits against persons acting in their official capacity "generally represent only another way of pleading an action against the entity of which the officer is an agent," and where "the government entity receives notice and an opportunity to respond to the official capacity suit, '[the] suit is, in all respects other than name, to be treated as a suit against the entity.'"  Chew v. Gates, 27 F.3d 1432, 1446 n.15 (9th Cir. 1994) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)).  "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."  Graham, 473 U.S. at 165 (contrasting, under § 1983, "personal-capacity" suits with "official-capacity" suits).  Thus, the claims against the former Chiefs of SFPD in their official capacities are likewise deemed to be claims against the City. Defendants' motion to dismiss the § 1983 cause of action against the City and the official capacity Defendants argues that it fails to state a claim, and is barred by the statute of limitations. Defendants do not seek dismissal of the § 1983 claim against Gascón and Godown in their individual capacities.

A. Sufficiency of Allegations

Plaintiffs' § 1983 claim against the City and official capacity Defendants can only be brought in accordance with Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978).  In that case, the Supreme Court held that municipalities are "persons" subject to liability under § 1983 where "action pursuant

United States District Court
For the Northern District of California

to official municipal policy of some nature cause[s] a constitutional tort."[5]  Although a city may not be held vicariously liable for the unconstitutional acts of its employees on the basis of an employer-employee relationship with the tortfeasor, under _Monell_, it may be held liable when a municipal policy causes an employee to violate another's constitutional right.  _Id._ at 691-92.

The Ninth Circuit has stated that municipal liability under _Monell_ may be established in one of three ways: (1) "the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" (2) "the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy;" or (3) "the plaintiff may

---

[5] Section 1983 states in relevant part,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it."  Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

Defendants contend that Plaintiffs have not stated a claim under the second theory because they have not alleged that the Defendant Police Chiefs had final policy-making authority with respect to promotion methods.  "Whether a particular official has final policy-making authority is a question of state law."  Id. at 1346.  "'To establish municipal liability under section 1983, it must be shown that the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'"  Coming Up, Inc. v. City and Cnty. of San Francisco, 830 F. Supp. 1302, 1311 (N.D. Cal. 1993) (emphasis in original) (quoting Davis v. Mason Cnty., 927 F.2d 1473, 1480 (9th Cir. 1991)).  Plaintiffs respond that the Chiefs were final policy-makers because they had authority over the specific promotions.  However, as stated above, the relevant final policy-maker for the purpose of a Monell claim is the person who establishes the policy, not the one who appoints the candidate to a higher level position.  Plaintiffs concede that the Civil Service Commission establishes the rules to certify candidates for promotion.  Furthermore, the Chiefs' promotion decisions may be appealed to the Civil Service Commission.  Thus, Plaintiffs cannot allege Monell a claim under the second theory

because the Chiefs are not officials alleged to bear "final policy-making authority."

Under the first prong, Plaintiffs could allege a <u>Monell</u> claim by showing that the Chiefs acted pursuant to an official City policy for selecting candidates for promotion.  Plaintiffs contend that they have stated a constitutional violation committed pursuant to a formal governmental policy, that is, the use of banding as a method to select candidates for promotion.  The City responds that the Ninth Circuit in <u>Officers for Justice</u>, 979 F.2d at 722, upheld the adoption of the banding method.

At issue in that decision was the City's proposal to comply with the consent decree by banding scores from the 1989 examinations for promotions to Assistant Inspector and Sergeant. The results from the 1989 examinations had produced an adverse impact on minorities.  Thus, the City proposed to consider race as the sole criterion for selecting candidates for promotion from among those with scores within the same band.  <u>Id.</u> at 723-24.  The City sought a declaratory judgment from the district court that its banding proposal was legal.

The district court ruled that the City's plan violated the restrictions on race-conscious remedies, but that banding itself was an appropriate use of test scores and that the City's computation of the band was acceptable.  <u>Id.</u> at 724.  The City then proposed three criteria, in addition to the race criterion, to select candidates for promotion from among those with scores

11

within the same band--professional conduct, education, and training and experience.  Id.  The district court accepted this modification and approved the plan.  Id.  The Ninth Circuit affirmed under the Equal Protection Clause of the Fourteenth Amendment, in the context of the City's effort to remedy past discrimination and its obligation to comply with the 1979 consent decree.  Id. at 726.

Thus, Plaintiffs' allegation that the City had a policy of using banding at the time of the consent decree in Officers for Justice does not support Plaintiffs' claim that the City has a "long history" of discrimination.  See Schiff v. City and Cnty. of San Francisco, 2011 WL 4037031, *11 (N.D. Cal.).[6]  Further, Plaintiffs acknowledge in their complaint that the use of banding in 2000 was challenged in earlier litigation that was resolved through settlement in 2006 and do not claim that the court found or the City admitted that the use of banding in 2000 was discriminatory.  Compl. at ¶ 18 (citing Schiff v. City and Cnty. of San Francisco, 2007 WL 2301773 (N.D. Cal.))[7].

Presently, Plaintiffs allege that the City's continued use of a banding method is an official policy.  However, Plaintiffs do not allege that banding under the City's current plan is

---

[6] This decision was made in Schiff v. City and County of San Francisco, C 08-4627 PJH (Schiff II).

[7] This decision was made in Schiff v. City and County of San Francisco, C 03-4345 MMC (Schiff I).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

unconstitutional or amounts to discrimination against white candidates.  Plaintiffs do not claim that the City's current banding method includes consideration of race as a secondary criterion.  Thus, it is irrelevant that the banding method has been applied after the consent decree has ended.  Plaintiffs have not alleged that the Chiefs acted pursuant to an unconstitutional City policy.

Nor have Plaintiffs sufficiently alleged a Monell claim based on a long-standing practice and custom of discrimination, apart from the City's policy of using banding.  Plaintiffs give only one example of such an alleged practice that does not involve banding.  Plaintiffs point to the City's 1984 decision to re-score an examination for promotion to Inspector and Sergeant positions.  The rescoring placed a larger number of minorities in the top category of applicants.  The Ninth Circuit invalidated the City's action in San Francisco Police Officers' Association v. City and County of San Francisco, 869 F.2d at 1184, stating that it discriminated against whites on the basis of race.  However, this incident alone is not sufficient to allege a long-standing practice of anti-white discrimination.

The third basis for a Monell claim is that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.  However, Plaintiffs do not assert that they have alleged Monell claim under such a theory.

13

**United States District Court**
For the Northern District of California

The Court grants leave to Plaintiffs to amend their § 1983 claim against the City, and the official capacity Defendants if necessary, to allege a <u>Monell</u> claim sufficiently, provided that they are able to do so consistently with this order and their original complaint.

Plaintiffs have also asserted a § 1983 claim against Gascón and Godown in their individual capacities.  Plaintiffs have alleged that Gascón and Godown intentionally discriminated against them based on their race by not selecting them for promotion from among those candidates with scores within the band and deliberately selecting less-qualified African American and Asian American candidates instead.  Compl. at ¶¶ 22, 27.  Plaintiffs claim that Gascón and Godown took advantage of the banding method to identify a cohort of African American and Asian American candidates eligible for promotion and selected them over Plaintiffs.  As noted above, Defendants have not moved to dismiss the § 1983 claim against Gascón and Godown in their individual capacities.

B. Timeliness

Defendants also seek to dismiss Plaintiffs' § 1983 claim against the City and official capacity Defendants as untimely. The parties agree that a two-year limitations period applies to a cause of action under § 1983 and that federal law governs the date of accrual for a § 1983 claim.  The parties, however, dispute when Plaintiffs' § 1983 <u>Monell</u> claim accrued.

14

Defendants contend that the claim accrued in January 2008,[8] when the City announced that the banding method would be used to select candidates from the 2007 list for promotion.  Plaintiffs argue that their claim accrued on the date the 2007 list expired, January 14, 2011, rendering them ineligible for promotion.

In Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1049-51 (9th Cir. 2008), the Ninth Circuit held that claims under §§ 1983 and 1981 accrued when applicants were informed that they would not be hired, or when they should have realized that they had not been hired.  That is, claims accrue when the applicants learn of the "actual injury," not when they suspect a "legal wrong," such as that the employer's action was based on discriminatory intent.  Under Lukovsky, Plaintiffs' § 1983 claim accrued when they were notified that they were not selected for promotion to the position of Captain or when they should have known that they were not selected.  Plaintiffs do not allege the dates when they were passed over for promotion.  They filed their complaint on August 16, 2011.  Provided that, on or after August 16, 2009, Plaintiffs learned they were denied one or more promotions, their claim under § 1983 is timely.

Defendants' motion to dismiss Plaintiffs' § 1983 claim against the City as untimely is denied.

----

[8] As noted earlier, Plaintiffs did not plead the date when the use of the banding method was announced, but in their brief they assert that the City announced it in December 2007.

United States District Court
For the Northern District of California

III. Section 1981 Claim

Defendants move to dismiss Plaintiffs' § 1981[9] claim against all Defendants for failure to allege an impaired contractual right to a promotion.  Defendants also argue that Plaintiffs' § 1981 claim against the City should be dismissed as time-barred and for failure to allege a violation under Monell.

A. Sufficiency of Allegations

Defendants argue that Plaintiffs' § 1981 claim against all Defendants is defective because their rejections for promotion do not amount to an impairment of "rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 479-80 (2006). Defendants contend that Plaintiffs cannot satisfy this requirement because, under California law, it is well established that public employment is not held by contract but by statute.  Miller v. State of California, 18 Cal. 3d 808, 813 (1977).  Several district

_____

[9] Section 1981(a) states,

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  The Supreme Court has held that protection under § 1981 applies to whites, as well as non-whites.  McDonald, 427 U.S. at 286-87.

courts have reasoned that a public employee may not state a claim under § 1981 based on the denial of a promotion for this reason. See e.g., Zimmerman v. City and Cnty. of San Francisco, 2000 WL 1071830, *10-11 (N.D. Cal.); Barefield v. California University Bakersfield, 2006 WL 829122, *4-5 (E.D. Cal.).  However, other district courts have held that such claims are actionable.  See e.g., Byrd v. California Superior Court, 2009 WL 2031761, *7 (N.D. Cal.); Lukovsky v. City and Cnty. of San Francisco, 2006 WL 436142, *1-4 (N.D. Cal.), aff'd on other grounds, 535 F.3d at 1044.

The Court is persuaded by the district court's reasoning in Lukovsky.  There, the district court, addressing a § 1981 claim involving a public employee's promotion denial, applied the three part test established by the Ninth Circuit in Judie v. Hamilton, 872 F.2d 919, 922 (9th Cir. 1989), to determine whether a contractual relationship exists for purposes of a § 1981 claim.[10]

---

[10] According to Judie,

> First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum State. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States."

Judie, 872 F.2d at 922 (quoting Burnett v. Grattan, 468 U.S. 42 (1984)).

United States District Court
For the Northern District of California

With respect to the third prong of the test, the Lukovsky district court found that, even if California law provides that no contractual right exists for promotion in public employment, such law is inconsistent with predominant federal interests that California public employees have recourse under § 1981 for discrimination in promotion. Id. at *3 (citing Sagana v. Tenorio, 384 F.3d 731, 737 (9th Cir. 2004)). Furthermore, the district court noted Congress's 1991 amendment to § 1981, adding a provision that "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). With this amendment, the protections under the statute were expanded to include not only the initiation of the employment relationship, but later modifications during the course of employment. Accordingly, the district court held, and this Court agrees, that the discriminatory denial of a promotion to a public employee falls within the amended version of § 1981.[11]

---

[11] In an unpublished decision, Ramirez v. Kroonen, 44 Fed. Appx. 212, 218 (9th Cir. 2002), the Ninth Circuit held that the fact that California law provides that public employment is not held by contract, but by statute, did not preclude the employee of a community college from asserting a § 1981 claim, because application of such state law to bar liability under § 1981 would be inconsistent with federal law.

Defendants' motion to dismiss Plaintiffs' § 1981 claim against all Defendants for failure to allege a contract is unavailing.

However, Plaintiffs' § 1981 claim against the City fails for a different reason asserted by Defendants.  The Ninth Circuit has held that a plaintiff pursuing a claim against a municipality under § 1981 must allege that his or her injury was caused by an official "policy or custom," as required under Monell, 436 U.S. at 658.  Fed. of African American Contractors v. City of Oakland, 96 F.3d 1204, 1215 (9th Cir. 1996).  A municipality is not subject to § 1981 liability under a theory of respondeat superior.  Id.  For the reasons explained above, Plaintiffs have failed to allege a cognizable municipal policy or custom that violates the constitution and, thus, Plaintiffs' § 1981 claim is insufficiently alleged.  See e.g., Harris v. City and Cnty. of San Francisco, 2009 WL 2421732, *13-14 (holding that the City was entitled to summary judgment with regard to plaintiff's § 1981 claim because he failed to present evidence to establish a municipal policy, practice or custom).  Leave to amend this claim against the City, and against official capacity Defendants if needed, is granted.

B. Timeliness

Defendants argue that Plaintiffs' § 1981 claim against the City based on its use of banding is untimely.  Defendants contend that a two-year limitations period applies to Plaintiffs' § 1981 claim, whereas Plaintiffs assert a four-year limitations period.

Section 1981 does not contain an express statute of limitations. Title 28 U.S.C. § 1658 establishes a four-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990.[12]  In Jones v. R.R. Donnelley & Sons Company, 541 U.S. 369, 382 (2004), the Supreme Court held that § 1658's "catchall" four-year limitations period applies "if the plaintiff's claim against the defendant was made possible by a post-1990 [federal] enactment."  Jones held that the plaintiff's hostile work environment, wrongful termination, and failure to transfer claims "arose under" the 1991 amendment to § 1981 because the plaintiff's causes of action were "made possible" by the amendment.  Id. at 382.

Patterson v. McLean Credit Union, 491 U.S. 164, 171 (1989), held that claims for failure to promote were generally not actionable under § 1981.  In addressing the plaintiff's failure-to-promote claim, the Patterson Court stated that "the question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the

_____

[12] If the four-year limitations period does not apply to Plaintiffs' § 1981 claim, the limitations period must be "borrowed" from the appropriate state law, which the City correctly argues is the California personal injury statute, California Code of Civil Procedure section 335.1, establishing a two-year limitations period.  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1140 (9th Cir. 2000) (citing Goodman v. Luken Steel Co., 482 U.S. 656, 660-61 (1987)).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

employer." Id. at 185.  Patterson stated, "Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981."  There, the Court did not rule that the failure to promote claim was cognizable because the employer had not argued that it was not.  Id. at 186.

In 1991, in response to Patterson, Congress amended § 1981 to expand the statutory protection to include not only the initiation of the employment relationship, but later modifications during the course of the employment relationship.  CBOCS West, Inc. v. Humphries, 553 U.S. 442, 450 (2008).  Thus, whether Plaintiffs' § 1981 claim against the City was enabled by the 1991 amendment depends on whether the promotions at issue would have entailed a new distinct relationship between them and SFPD.

Because there are no allegations that describe how Plaintiffs' relationship with their employer would have changed had they been promoted, this issue cannot be decided on a motion to dismiss.  Whether the two year or the four year statute applies will be resolved on a motion for summary judgment, or at trial if there is a dispute of fact as to whether the promotions at issue amount to new contracts.

Defendants' motion to dismiss Plaintiffs' § 1981 claim against the City as untimely is denied.

United States District Court
For the Northern District of California

IV. Section 1985 Claim

Defendants seek to dismiss Plaintiffs' § 1985 claim as to all Defendants.  A claim under § 1985 requires, among other elements, "a conspiracy" and "an act in furtherance of the conspiracy." Scott, 463 U.S. at 828-29.  Defendants correctly note that the complaint fails to allege any facts reflecting these elements. Plaintiffs argue that they can state a claim for conspiracy, if they are permitted to amend their complaint to allege that the banding policy was handed down by the Civil Service Commission to the Personnel Department to the Chiefs of Police.  However, such allegations are insufficient to state a claim for conspiracy because they amount to an assertion that the City conspired with itself through coordinated action among its departments.  See Rabkin v. Dean, 856 F. Supp. 543, 551-52 (N.D. Cal. 1994). Plaintiffs' § 1985 conspiracy claim is dismissed with leave to amend, if they can do so consistently with this order.

V. Motion to Strike

Defendants move to strike Plaintiffs' references to the use of banding in prior years, including years during which the City's conduct was governed by the 1979 consent decree.  Federal Rule of Civil Procedure 12(f) authorizes the Court to strike from a pleading "any redundant, immaterial, or scandalous matter."  Fed. R. Civ. P. 12(f).  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior

22

to trial." <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal alterations and quotation marks omitted), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> 510 U.S. 517 (1994).  Matter is immaterial if it has no essential or important relationship to a claim for relief or defense.  <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, 618 F.3d 970, 974 (9th Cir. 2010).  Impertinent matter is that which does not pertain to issues in question.  <u>Id.</u> Defendants' motion to strike is denied because the allegations at issue provide factual background for the present lawsuit.

CONCLUSION

Defendants' motion to dismiss is granted in part.  All claims against SFPD and the former Chiefs of Police Gascón and Godown, in their official capacities, are deemed claims against the City. Defendants' motion to dismiss the § 1981 claim against all Defendants for failure to allege an impairment of contractual right is not well-taken.  Nor is Defendants' motion to dismiss the § 1981 claim against the City as time-barred.  However, Plaintiffs' § 1983 and § 1981 claims against the City are dismissed for the other reasons discussed above, with leave to amend.  Plaintiffs' § 1985 claim against all Defendants is dismissed with leave to amend.  Defendants' motion to strike is denied.

Plaintiffs may submit an amended complaint within seven days. Plaintiffs may amend their complaint only to address deficiencies identified in this order; they may not allege new claims.  In the

event that Plaintiffs file an amended complaint, Defendants must answer or move to dismiss the amended complaint within twenty-one days thereafter.  The parties shall appear for a case management conference on July 5, 2012 at 2:00 pm.

IT IS SO ORDERED.

Dated: 4/30/2012

CLAUDIA WILKEN
United States District Judge