IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEINZ HOFMANN and THOMAS BUCKLEY,<br><br>        Plaintiffs,<br><br>  v.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO; GEORGE GASCON, in his individual capacity; and JEFFREY GODOWN, in his individual capacity,<br><br>        Defendants.<br>_____/ | No. C 11-4016 CW<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Docket No. 39) |

In this disparate treatment action, Plaintiffs Heinz Hofmann and Thomas Buckley, both of whom are white, male police lieutenants, challenge the promotion practices employed by the San Francisco Police Department (SFPD), which they claim discriminate on the basis of race. Plaintiffs have filed suit against the City and County of San Francisco and former SFPD Chiefs of Police George Gascón and Jeffery Godown. In their First Amended Complaint (1AC) Plaintiffs allege five causes of action: (1) a claim under 42 U.S.C. § 1981 against all Defendants; (2) a claim under 42 U.S.C. § 1983 against all Defendants; (3) a claim under the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., against the City; (4) a claim under California's Fair Employment and Housing Act, California Government Code section 12940, against the

City; and (5) a claim under the California Constitution, Article I, section 31, against the City. Defendants move to dismiss Plaintiffs' § 1983 and § 1981 claims against the City for failure adequately to allege violations under Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978), and for failure to allege their claims within the limitations period. In addition, Defendants argue that Plaintiffs did not adequately allege their claim against the City under Title VII and that their claims against the City under Title VII, the FEHA and the California constitution are untimely.

Having considered all of the parties' submissions and oral argument, the Court denies Defendants' motion to dismiss the 1AC.

BACKGROUND

Plaintiffs' 1AC largely mirrors the allegations in the original complaint. The allegations were described in detail in the Court's April 30, 2012 order addressing Defendants' motion to dismiss the original complaint. This order addresses the new allegations as pertinent to Defendants' second motion to dismiss.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most

2

favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

ANALYSIS

I. Section 1983 Claim

A. Sufficiency of Allegations

Under Monell, 436 U.S. at 690-91, Plaintiffs may state a § 1983 claim against the City where "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." The Ninth Circuit has held that municipal liability under Monell may be established in one of three ways: (1) "the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" (2) "the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy;" or (3) "the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

Plaintiffs previously alleged that Chiefs Gascón and Godown had final policy-making authority for the City with respect to

3

promotions in the SFPD under the City Charter, Administrative Code, and Civil Service Commission regulations and policies. However, the Court determined that Plaintiffs had not alleged that the Chiefs had the final policy-making authority necessary to pursue their § 1983 claim because they conceded that the Civil Service Commission establishes the rules to certify candidates for promotion and the Chiefs' individual promotion decisions could be appealed to the Commission. That the Chiefs had authority over the specific promotions did not establish that they had final promotion policy-making power. In the 1AC, Plaintiffs allege that the City Charter, in sections 2A.30 and A8.329, "expressly delegates the policymaking function of appointing individuals for promotion from the certification lists established by the City's Civil Service Commission." 1AC at ¶ 38. Plaintiffs' citation to sections 2A.30 and A8.329 does not persuade the Court to reconsider its earlier determination that the Chiefs are not promotion policy-makers.

The Court previously held that the City's continued use of a banding method is an official policy, but that Plaintiffs had not alleged that banding under the City's current plan is unconstitutional or amounts to discrimination against white candidates. Accordingly, the Court found that Plaintiffs had not alleged that the Chiefs had acted pursuant to an unconstitutional policy.

Plaintiffs now allege that the City has a long-standing practice and custom in which it "resorts to banding when sufficient numbers of minorities fail to do well enough on the promotional examinations to be promoted under an alternate

4

certification rule (e.g. Rank Order, Rule of 3, Rule of 5, etc.)." 1AC at ¶ 28. Plaintiffs claim that the "purposes behind the City's use of the banding procedure in SFPD promotions is to artificially increase the number of minorities promotable on eligibility lists than otherwise would be under some certification rule." 1AC at ¶ 28. Plaintiffs allege that, since 1998, when the consent decree arising from a 1973 class action, Officers for Justice v. Civil Service Commission of the City and County of San Francisco, C 73-0657, was terminated, the City has used banding to select candidates for promotion from the 2000 and 2005 Lieutenant's Lists, and the 2001, 2004 and 2007 Captain's List. According to Plaintiffs' 1AC, the City abandoned banding as a method to select candidates from the 2011 Captain's List because all black applicants are reachable under the Rule of 10 used for the list. 1AC at ¶ 24.

Defendants argue that Plaintiffs cannot allege a Monell claim based on the City's use of banding because the method is legal as a matter of law. As the Court described in its previous order, the Ninth Circuit in Officers for Justice v. Civil Service Commission of the City and County of San Francisco, 979 F.2d 721, 724 (9th Cir. 1992), held that the banding described in that case was constitutional. The Ninth Circuit described a band as a "statistically derived confidence range that is applied to the examination results." Id. at 722. However, Plaintiffs' amended Monell claim does not allege that the banding method itself discriminates on the basis of race. Rather, Plaintiffs claim that the City has a custom and practice of discriminating against white applicants by opting to use the banding method, rather than a

5

different selection rule, only when few African Americans and Asian Americans are eligible for promotion under those other selection rules.  Thus, the Ninth Circuit's ruling does not preclude Plaintiffs' claim.

Defendants further argue that Plaintiffs' claim fails because they remained eligible for promotion when the City applied banding to the 2007 Captain's List.  Plaintiffs were within the forty-five point band, but they were not selected based on "secondary criteria," such as education, training, assignments, disciplinary history and commendations or awards.  Accordingly, Defendants contend that Plaintiffs were not injured by the City's alleged custom of selectively using banding.

Defendants' argument is not persuasive.  Plaintiffs' amended allegations assert a municipal custom and practice in which the City resorted to the banding method to boost the number of African American and Asian American candidates eligible for promotion and to facilitate discrimination against white candidates; and the Chiefs, in turn, engaged in a custom and practice of selecting minority candidates for promotion over objectively more qualified white applicants.  1AC at ¶ 30.  Although Plaintiffs were eligible for promotion because they were within the forty-five point band, they were allegedly injured when the Chiefs declined to promote them.

Finally, Defendants challenge the sufficiency of Plaintiffs' factual allegations that the Chiefs made promotions pursuant to the City's longstanding custom and practice of discrimination. Defendants contend that Plaintiffs have repeated the spare allegations in their original complaint that the Chiefs made

6

promotions "under the City's policy of banding," and that these allegations do not include sufficient facts to infer a plausible claim as required by Twombly, 550 U.S. at 555.

Defendants neglect several new allegations. In paragraphs twenty-four and thirty of the 1AC, as noted above, Plaintiffs allege that the City used banding to select candidates for promotion from the 2000 and 2005 Lieutenant's Lists, and the 2001, 2004 and 2007 Captain's Lists, but not the 2011 Captain's List. In addition, Plaintiffs add, "When any blacks were within the band on any of these SFDP promotional lists, they were virtually always hired (with 2 notable exceptions that constituted extraordinary circumstances)." 1AC at ¶ 30. Plaintiffs also allege that the City promoted all five African American candidates from the band applied to the 2000 Lieutenant's list. 1AC at ¶ 18. Because Plaintiffs contend that African Americans were "virtually always" hired over white candidates from within the band and that this practice occurred for several years, during the tenure of more than one Chief, the allegations could support an inference that the Chiefs were making promotion decisions pursuant to a discriminatory policy, custom and practice attributable to the City.

In sum, Plaintiffs have alleged a Monell claim because they claim that the City selectively applied banding to boost the number of African American and Asian American candidates eligible for promotion, and SFPD Chiefs, pursuant to the City's policy of discrimination, engaged in a longstanding custom and practice of selecting virtually all of such candidates for promotion over objectively more qualified white candidates within the band. To

7

prevail on their Monell claim alleging disparate treatment, Plaintiffs must prove that both the City and the individual Chiefs acted with discriminatory intent and that the Chiefs did so because of the City's intentionally discriminatory policy, not merely their own desire to discriminate against white candidates. Plaintiffs must also prove that, but for such discrimination, each Plaintiff would have been selected as the most qualified applicant for a particular promotion.

B. Timeliness of Claim

The parties do not dispute that a two-year limitations period applies to Plaintiffs' § 1983 claim. Instead, their dispute centers on the date that the claim accrued.

In their first motion to dismiss Defendants argued that Plaintiffs' claim accrued in January 2008, when the City announced that the banding method would be used to select candidates from the 2007 list for promotion. Plaintiffs argued that their claim accrued on the date the 2007 list expired, January 14, 2011, when the possibility that they would be promoted from the list ended. Relying on Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1049-51 (9th Cir. 2008), the Court held that Plaintiffs' § 1983 claim accrued when they were notified that they were not selected for promotion to the position of Captain or when they should have known that they were not selected. In Lukovsky, the plaintiffs argued that their claims did not accrue until they knew that they were not hired and they learned of the defendants' alleged discriminatory intent. The plaintiffs claimed that they had no reason to know of the defendants' discriminatory conduct until they were informed of it years after they were denied the

8

positions. The Ninth Circuit held that claims under § 1983 accrue when applicants are informed or should know that they have not been hired. That is, claims accrue when the applicants learn of the "actual injury," not when they suspect a "legal wrong," such as that the employer's action was based on discriminatory intent. Id. In the original complaint, Plaintiffs had not alleged the dates when they were passed over for promotion. The Court held that, given that they filed their complaint on August 16, 2011, provided that they learned they were denied one or more promotions on or after August 16, 2009, their claim under § 1983 is timely.

There is no reason to change this decision because no new allegations indicate that Plaintiffs' claim is untimely. Plaintiffs' claims here did not accrue in January 2008 when the City announced its decision to use banding, but only later when it acted on its decision by denying promotions to Plaintiffs. When the City announced the decision to use banding, Plaintiffs only had notice of the possibility of an adverse employment action against them, but the adverse action did not occur until they were actually denied a promotion. The denial of Plaintiffs' applications for promotion did not automatically flow from the announcement that the City intended to use banding.

Defendants argue that the Court's ruling improperly conflated two adverse employment decisions--the City's decision to use banding and the Chiefs' promotion decisions--and that determining the accrual date of Plaintiffs' banding claim requires that the Court distinguish between the two decisions. Lukovsky does not support Defendants' position, nor does Delaware State College v. Ricks, 449 U.S. 250, 258-59 (1980), a case upon which Lukovsky

9

relies. In Ricks, the Supreme Court held that the plaintiff's § 1981 and Title VII claims accrued when the plaintiff was denied tenure, not on the date, one year later, when the plaintiff's employment actually ended. Although the college had a policy of not immediately terminating the employment of a professor who was denied tenure, but instead allowing one additional year of employment under a "terminal" contract, the Court rejected the plaintiff's argument that his claim did not accrue until his employment actually ended. The Court reasoned that the plaintiff had only alleged discrimination in the denial of tenure, after which the termination of his employment was "inevitable." Id. at 257-58. Unlike the situation in Ricks, the denial of Plaintiffs' applications for promotion was not inevitable once the City chose to apply banding. Thus, Ricks does not support finding that the adverse employment action occurred when the City decided to use the banding method.

Plaintiffs argue that the Supreme Court's more recent decision in Lewis v. City of Chicago, 130 S. Ct. 2191 (2010), supports their position that actionable discrimination occurred each time the City selected a candidate for promotion from the list of eligible candidates and, therefore, their § 1983 disparate treatment claim is timely. Defendants counter that Lewis undermines Plaintiffs' position. Lewis concerned disparate impact claims under Title VII,[1] which do not require a showing of discriminatory intent. Id. at 2199. There, the Court rejected

---

[1] The Ninth Circuit has stated that cases arising under Title VII are instructive with regard to the accrual of § 1983 claims. Lukovsky, 535 F.3d at 1049 n.3.

10

the City of Chicago's argument that the only actionable discrimination occurred when it used examination results to adopt a cutoff score and create its hiring eligibility list.  <u>Lewis</u> held that an "employment practice," for purposes of a Title VII disparate impact claim, encompassed the City's decision to adopt a cutoff score and create a list of candidates eligible for hire, as well as the City's later decision to hire as firefighters certain candidates on the eligibility list.  <u>Lewis</u> does not compel a finding that Plaintiffs alleged discriminatory intent within the limitations period, but does not indicate that they will be unable to establish a timely disparate treatment claim under § 1983.  <u>Lewis</u> is inapposite as to both Plaintiffs' and Defendants' arguments on this point.

Defendants' motion to dismiss Plaintiffs' § 1983 claim as untimely is denied without prejudice to revisiting the issue on summary judgment.[2]  As noted earlier, to succeed on their <u>Monell</u> claim, Plaintiffs must prove that the City adopted the banding policy and the individual Chiefs made their promotion decisions-- all with discriminatory intent in accordance with City policy, custom and practice.  To ensure that their claim is timely, Plaintiffs will be required to prove that a failure to promote each of them, motivated by discriminatory intent, occurred within the limitations period.

---

[2] At the hearing, the Court asked the parties when the disputed promotion decisions were made but they declined to clarify this point.  Thus far, they have not submitted a joint or separate letters indicating the promotion decision dates, as required by this Court's July 5, 2012 order.  Nor have they complied with the Court's order that they explain how the Rule of 5 was applied in the circumstances of tied scores.

11

II. Section 1981 Claim

Defendants argue that Plaintiffs have failed to allege facts sufficient to state a claim under § 1981. The Court previously dismissed Plaintiffs § 1981 claim for failure to allege a cognizable municipal custom or policy. The Court found that Ninth Circuit precedent, specifically <u>Federation of African American Contractors v. City of Oakland</u>, 96 F.3d 1204, 1215 (9th Cir. 1996), required a plaintiff pursuing a § 1981 claim against a municipality to allege that his or her injury was caused by an official "policy or custom" under <u>Monell</u>.

As explained above, Plaintiffs have sufficiently alleged a long-standing policy, custom and practice of selectively adopting banding to increase the number of African American and Asian American candidates eligible for promotion and then uniformly promoting such individuals over objectively better qualified white candidates. Defendants' motion to dismiss Plaintiffs' § 1981 claim is denied.

III. Title VII Claim

A. Sufficiency of Allegations

Defendants contend that Plaintiffs' Title VII claim is precluded by the Ninth Circuit's approval of banding as a neutral selection method in the <u>Officers for Justice</u> decision discussed earlier. Defendants also rely on <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604 (1993). There, addressing ADEA claims, the Supreme Court stated, "Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." <u>Id.</u> Plaintiffs now

12

claim that since 1998 the City has selectively resorted to the banding method to boost the number of African American and Asian American candidates eligible for promotion, and has chosen to promote African American and Asian American candidates who were less qualified than their white counterparts and this constitutes the City's policy, custom and practice of intentionally discriminating against white applicants. For this reason, Defendants' motion to dismiss Plaintiffs' Title VII claim is denied.

B. Failure to Exhaust Timely

Defendants also contend that Plaintiffs' Title VII claim is time-barred because Plaintiffs filed untimely administrative complaints and the administrative complaints do not allege the type of harm Plaintiffs purport to claim in the 1AC. Specifically, Defendants contend that the administrative complaints allege only discriminatory individual promotion decisions, not the unlawful use of banding.

With respect to administrative exhaustion, the Ninth Circuit has stated, "Since laypersons initiate the administrative process for resolving employment discrimination complaints, the procedural requirements for Title VII actions are neither interpreted too technically nor applied too mechanically." Greenlaw v. Garrett, 59 F.3d 994, 999 (9th Cir. 1995) (internal quotation marks omitted). "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." Green v. Los Angeles Cnty. Superintendent of Schs., 883 F.2d 1472, 1476 (9th Cir. 1989) (internal quotation

13

marks omitted).  In determining whether a new claim is like or reasonably related to allegations contained in the previous charge, the court inquires into "whether the original EEOC investigation would have encompassed the additional charges." Id.

Hofmann stated in his EEOC charge that in or about 2007 he applied for a promotion to the position of Captain and he was ranked twenty on the list.  He further claimed that he was passed over for promotion, while the City promoted applicants who were ranked lower than he.  Likewise, Buckley alleged in his administrative charge that in 2007 he applied for promotion to the position of Captain, but officers ranked lower than he were selected.

Although Plaintiffs did not specifically mention the City's use of banding, their administrative claims were sufficient to encompass the rules and decision-making process that the City used to select candidates for promotion.  Defendants' motion to dismiss Plaintiffs' Title VII claim for failure to exhaust their administrative remedies is not well-taken.

Defendants also argue that Plaintiffs' administrative charges were untimely given that the City announced its banding rule in December 2007, but Plaintiffs filed their charges of discrimination with the EEOC in 2011.  Plaintiffs respond that the 300 day period for them to file an administrative complaint began to run from the day they were informed that they would not be hired, not from when they learned the City would employ banding as a certification rule.  Like the original complaint, Plaintiffs' 1AC does not allege the dates when they were passed over for specific promotions.  Provided that Plaintiffs were notified that

14

they were denied a promotion within the 300 days before the Equal Employment Commission received their administrative charges, their charges were timely. At this stage in the litigation, Defendants' request to dismiss Plaintiffs' Title VII claim as untimely lacks merit.

IV. FEHA Claim

As with the Title VII claim, Defendants argue that Plaintiffs' FEHA allegations are deficient because the banding method has been held constitutional by the Ninth Circuit and Plaintiffs have failed to allege that they were harmed by the City's use of it. For the reasons stated above, Plaintiffs' FEHA claim is not foreclosed by the Ninth Circuit's decision in Officers for Justice, 979 F.2d at 724, 728. Defendants are also incorrect that the 1AC fails to allege that the City discriminated against them with respect to subsequent promotion decisions. As discussed earlier, Plaintiffs' new allegations are sufficient to allow an inference that the Chiefs made discriminatory promotion decisions pursuant to a City policy. Accordingly, Defendants' motion to dismiss Plaintiffs' FEHA claim based on insufficient allegations is denied.

Like Title VII, under the FEHA, an "employee must exhaust the administrative remedy provided by the statute by filing a complaint with the Department of Fair Employment and Housing . . . to be entitled to file a civil action in court based on violations of the FEHA." Romano v. Rockwell Int'l, Inc., 14 Cal. 4th 479, 492 (1996) (citing Cal. Gov. Code §§ 12960 and 12965(b)). The FEHA states that plaintiffs may file a complaint with the DFEH within one year from the date upon which the alleged unlawful

15

practice occurred. Cal. Govt. Code § 12960(d). Plaintiffs' FEHA claim need not be dismissed as untimely, because the allegations do not indicate that they filed their administrative complaints more than one year after they received notice of a denial of their application for promotion.

V. California Constitutional Claim

Defendants argue that Plaintiffs' claim under Article I, section 31 of the California Constitution should be dismissed because the banding method is lawful and Plaintiffs have failed to allege that discrimination by the City led to the denial of their promotion. As explained above, the 1AC alleges that the City used banding on select occasions to boost the number of Asian American and African American applicants eligible for promotion, and then took advantage of banding to select unqualified candidates. The allegations do not challenge the constitutionality of the banding method alone. Plaintiffs' allegations are sufficient to support an inference that the promotion decisions were the result of the City's policy, custom and practice of discrimination. Defendants' motion to dismiss Plaintiffs' state constitutional claim is denied.

CONCLUSION

Defendants' motion to dismiss Plaintiffs' § 1983, Title VII and FEHA claims as untimely is denied. Defendants' motion to dismiss Plaintiffs' § 1983, § 1981, Title VII, FEHA and state constitutional claims based on insufficient allegations is also denied.

The parties shall appear for a case management conference on June 29, 2013 at 2:00 p.m., whether or not any dispositive motion

16

1  is heard on that date, pursuant to this Court's July 5, 2012 case
2  management order.
3     IT IS SO ORDERED.

Dated: 8/2/2012

CLAUDIA WILKEN
United States District Judge

**United States District Court**
For the Northern District of California

17