IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HEINZ HOFMANN and THOMAS BUCKLEY,

    Plaintiffs,

  v.

CITY & COUNTY OF SAN FRANCISCO, et al.,

    Defendants.
_____/

No. C 11-4016 CW

ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT (Docket Nos. 80, 86)

Plaintiffs Heinz Hofmann and Thomas Buckley brought this employment discrimination action against Defendants, the City and County of San Francisco and former San Francisco Police Department (SFPD) Chiefs George Gascon and Jeffrey Godown. The parties now cross-move for summary judgment. After considering the parties' submissions and oral argument, the Court denies both motions.

## BACKGROUND

The following facts are undisputed except where otherwise noted. In the summer of 2007, the City posted a recruitment notice stating that it planned to promote an undisclosed number of current SFPD officers to the rank of captain. Interested officers were directed to submit their applications by September 21, 2007. Hofmann and Buckley, both of whom were serving as SFPD lieutenants at the time, submitted timely applications. Both men are white. Docket No. 86, Declaration of Heinz Hofmann ¶¶ 1-2.

The recruitment notice provided a broad overview of the City's process for selecting officers for promotion. It noted that all applicants would be required to take a multi-part examination comprising a series of written and oral exercises.

Id., Ex. B, Recruitment Notice, at 2. The top performers on the exam would then be placed on a list of finalists known as the "eligible list." Id. Any vacancies that arose at the captain position during the next thirty-six months would be filled by candidates selected from that list by the Chief of SFPD (or his or her designee) based on a variety of "secondary criteria." Id. These criteria would include the candidate's past "assignments, training, special qualifications, commendations/awards, bilingual certification, and discipline history." Id.

According to the recruitment notice, the City planned to use a system called the "Rule of Five Scores" to create the eligible list. Id. Under that system, the eligible list would consist of the officers with the five highest exam scores plus an additional officer -- that is, the next highest scorer -- for each additional vacancy that the City sought to fill. Thus, if the City were seeking to fill three vacancies during a given round of promotions, the seven highest-scoring officers would be placed on the eligible list.[1] Any officer who was on the eligible list but not selected during that round of promotions would remain on the eligible list for all subsequent rounds of promotions until he or she received a promotion or the exam results expired at the end of thirty-six months.

The 2007 recruitment notice identified a narrow exception to the Rule of Five Scores. Specifically, it stated,

---

[1] In short, the list consists of the five highest-scoring officers for each vacancy. As a practical matter, this means that -- barring any tie scores -- the eligible list will always consist of the officers with the four highest exam scores plus the X officers with the next highest scores, where X is the total number of vacancies.

2

> if there is adverse impact under Title VII of the Civil Rights Act of 1964 resulting from the Rule of Five Scores, then a broader certification rule shall be used but only after the broader rule is presented to the Civil Service Commission for approval -- the broader certification rule may not be used until the Human Resources Director is instructed by the Civil Service Commission to do so. The Commission may use its own rule, and is not bound to use the rule that is proposed.

Id.[2]  The notice did not provide any specific examples of alternative certification rules.

In January 2008, the City certified the results of the 2007 captain's exam and posted the results. Docket No. 80-7, Declaration of Alice Villagomez ¶ 15; Hofmann Decl., Ex. A, Examination Results Summary. At the same time, it announced that it no longer planned to use the Rule of Five Scores to fill all of the captain vacancies that arose over the next thirty-six months. Hofmann Decl., Ex. A. Rather, it would use the Rule of Five Scores to fill the first eleven vacancies and, for all subsequent vacancies, would use a different process known as "banding." Id. Banding places less emphasis than the Rule of Five Scores on an applicant's score ranking by treating all exam scores that fall within a "statistically derived confidence range" -- the "band" -- as functionally equivalent, without regard to exactly where each score falls within that range. Officers for Justice v. Civil Serv. Comm'n of San Francisco, 979 F.2d 721, 723 (9th Cir. 1992). The process "is premised on the belief that minor differences in test scores do not reliably predict differences in job

---

[2] The recruitment notice took this language directly from Civil Service Commission Rule 213.7. See Docket No. 94, Declaration of Sandra Eng, Ex. A, 2007 Civil Service Commission Rule 213, at 9. This rule was amended in 2010. Id. ¶ 4.

3

performance" and, as such, "strict rank order promotions will not necessarily reflect the correct comparative abilities of the candidates." Id. at 723-24.

For the 2007 captain's exam, the City elected to use a "band of 45 points . . . starting with Rank 16" to fill any vacancies that arose after the first eleven vacancies. Hofmann Decl., Ex. A. This band included the fourteen officers who achieved the sixteenth through twenty-eighth highest scores on the exam.[3] Id. In addition to these officers, the City would also continue to consider the applications of the four higher-ranked officers who were not selected for one of the first eleven promotions under the Rule of Five Scores. Id. Although the City did not identify the exact number of officers it planned to promote from within the band, its summary of the exam results noted that it expected roughly twenty-five captain vacancies to arise over the next thirty-six months. See id. Thus, because the City planned to fill the first eleven vacancies under the Rule of Five Scores, applicants could expect the City to make roughly fourteen promotions under the banding system.

Buckley and Hofmann achieved the sixteenth and twentieth highest scores, respectively, on the 2007 exam. Id. As a result, neither was eligible under the Rule of Five Scores for any of the first eleven vacancies. Although both were eligible for subsequent openings under the banding process, neither ultimately

---

[3] This band included fourteen officers, rather than thirteen, because it included a tie between two officers for the twentieth highest score.

4

received a promotion before the exam results expired in January 2011. Hofmann Decl. ¶ 12.

Buckley and Hofmann filed this action in August 2011, seven months after the 2007 exam results expired. In their complaint, they allege that Defendants decided to use banding instead of continuing to use the Rule of Five Scores because "Defendants felt a need to promote more blacks and Asians to Captain from the 2007 List." Docket No. 38, First Amended Complaint (1AC) ¶ 23. They further contend that they "were objectively more qualified, based on secondary criteria, than any of the blacks or Asians promoted below them from the 2007 List." Id. ¶ 22. Based on these allegations, they assert five causes of action: (1) a claim under 42 U.S.C. § 1981 against all Defendants; (2) a claim under 42 U.S.C. § 1983 against all Defendants; (3) a claim under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq., against the City and County of San Francisco; (4) a claim under the California Fair Employment and Housing Act (FEHA), Cal. Govt. Code §§ 12940 et seq., against the City and County of San Francisco; and (5) a claim under article I, section 31, of the California Constitution against the City and County of San Francisco. Id. ¶¶ 25-54.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

5

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990);

6

Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material,to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

DISCUSSION

I. Defendants' Motion for Summary Judgment

A. Plaintiffs' Race Discrimination Claims

Plaintiffs allege that Defendants engaged in unlawful disparate treatment by abandoning their initial selection process -- the Rule of Five Scores -- in favor of banding after the exam results were released. In particular, Plaintiffs contend that this decision was motivated by Defendants' desire to increase the number of minority candidates eligible for promotion to captain.

7

The Supreme Court recognized that this is a cognizable theory of disparate treatment liability under Title VII in <u>Ricci v. DeStefano</u>, 557 U.S. 557, 593 (2009). There, a group of white firefighters brought a Title VII claim against the City of New Haven after the city's fire department discarded the results of a promotional exam in order to make more minority firefighters eligible for promotions. <u>Id.</u> The Court granted summary judgment to the firefighters, explaining that the "injury arises in part from the high, and justified, expectations of the candidates who had participated in the testing process on the terms the City had established for the promotional process." <u>Id.</u> The Court specifically noted, "Had the City reviewed the exam results and then adopted banding to make the minority test scores appear higher, it would have violated Title VII's prohibition of adjusting test results on the basis of race." <u>Id.</u> at 590. Thus, to survive summary judgment here, Plaintiffs must produce sufficient evidence to support an inference that the City's decision to use banding was racially motivated.

Plaintiffs have met this burden. In particular, they have presented undisputed evidence showing that the City decided to use banding only <u>after</u> it obtained the results of the 2007 captain's examination. They point specifically to the City's own summary of the exam results, which it released in January 2008. Hofmann Decl., Ex. A. That document lists the scores for every officer who took the 2007 exam and announces the City plan to limit its use of the Rule of Five Scores to the first eleven captain vacancies. <u>Id.</u> The document expressly states that the City would use banding to make all other promotions to captain. <u>Id.</u> ("The

8

certification rule for this examination shall be the Rule of Five Scores for the first 11 approved hiring requisitions (to Rank 15). Thereafter, a statistically valid grouping with a confidence level of 1.96 and a sliding band of 45 points shall be used starting with Rank 16."). Defendants do not dispute that the City decided to use banding after it received the exam results. In fact, Defendants have provided a declaration from SFPD's human resources director, Alice Villagomez, confirming thisسequence of events. See Villagomez Decl. ¶ 15 (acknowledging that the 2007 exam results were adopted in January 2008 and noting that the City announced its plan to use banding that same month).

While Defendants deny that the decision to use banding was racially motivated, they have not provided a specific non-discriminatory reason for the decision, such as a desire to avoid disparate impact liability under Title VII.[4] See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (stating that, once a Title VII plaintiff has made out a prima facie case, the defendant must set forth "reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action" (emphasis in original)). At oral argument, Defendants conceded

---

[4] Even if Defendants had argued that the City adopted banding in order to avoid disparate impact liability -- a scenario expressly contemplated by the 2007 recruitment notice -- this issue would likely need to be resolved at trial anyway. Ricci made clear that determining whether an employer properly undertook race-conscious action to avoid disparate impact liability is a fact-intensive inquiry. 557 U.S. at 585 ("[U]nder Title VII, before an employer can engage in intentional discrimination for the asserted purpose of avoiding or remedying an unintentional disparate impact, the employer must have a strong basis in evidence to believe it will be subject to disparate-impact liability if it fails to take the race-conscious, discriminatory action." (emphasis added)).

9

that they had failed to provide any such justification for the decision and even suggested that the City's reasons for using banding are somehow privileged.[5] In light of this failure to provide a race-neutral reason for the decision to use banding, the timing of the decision -- immediately after the exam results were received -- is sufficient to raise an inference that it was motivated by a desire to increase the number of minority officers promoted. See generally Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994) (recognizing that, in Title VII actions, "an inference of discriminatory intent might be drawn" from a variety of different forms of circumstantial evidence including "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces").

Despite their failure to offer a race-neutral justification for the banding decision, Defendants argue that they cannot be held liable for disparate treatment because the individual hiring decisions they made after adopting the banding system were not racially motivated. This argument misses the point. Once again,

---

[5] When asked by the Court to explain why the City adopted banding, Defendants' counsel stated,

> I don't know the exact reasons for the choice to select banding. What I can tell you is that -- and this is in the record [--] the Civil Service Commission and the Department of Human Resources met in closed session with the City Attorney's office to discuss the certification rule. A decision was made. And that process in discussion has remained a privileged discussion. So we haven't talked about whatever facts were discussed in closed session.

Docket No. 111, June 27, 2013 Hrg. Tr. 17:9-:17. Although counsel later asserted that the decision was "race neutral," he did not identify any race neutral justification for the decision.

10

the crux of Plaintiffs' claim is that the banding decision <u>itself</u> constitutes disparate treatment because it was designed to increase the pool of minority candidates eligible for promotions, to the detriment of white applicants such as themselves with higher test scores. Plaintiffs' evidence is sufficient to support an inference that the banding decision was racially motivated. Accordingly, Defendants are not entitled to summary judgment on the ground that the City's individual promotion decisions, made after the initial banding decision, appear to be race neutral.

Finally, Defendants contend that, even without the decision to use banding, Plaintiffs would not have been selected for promotions because they were not performing their jobs adequately. This issue remains in dispute. Plaintiffs have produced the resumes that they submitted with their promotion applications and outlined their various credentials and qualifications to serve as captain. <u>See</u> Hofmann Decl., Ex. I. Although Defendants apparently dispute the value of those credentials, that dispute may not be resolved on a motion for summary judgment. <u>See, e.g.</u>, <u>EEOC v. Commc'n Technical Sys., Inc.</u>, 23 Fed. App'x 779, 781 (9th Cir. 2001) (reversing grant of summary judgment in Title VII action because factual disputes remained concerning the qualifications required for the job at issue and whether plaintiff possessed those qualifications). Granting summary judgment would be particularly inappropriate here, where the parties have provided scant information about the relevance of Plaintiffs' credentials and about the specific qualifications needed to serve effectively as captain. Thus, Defendants are not entitled to summary judgment on Plaintiffs' discrimination claims.

11

B. Plaintiffs' Claims for Municipal Liability

Defendants contend that Plaintiffs have failed to present sufficient evidence to support their claims for municipal liability under Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). As previously explained in the order denying Defendants' motion to dismiss, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Id. Rather, under Monell, it is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id.

The Ninth Circuit has held that a plaintiff may establish municipal liability in one of three ways: (1) "the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" (2) "the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy;" or (3) "the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Gillette v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir. 1992).

Here, Plaintiffs have presented sufficient evidence to support an inference that the City's decision to use banding was

12

made by a final policy-maker -- specifically, the City's Civil Service Commission. The January 2008 summary of the exam results, which Defendants concede was produced by the City's human resources department, announced the final policy decision of the Civil Service Commission. Hrg. Tr. 14:10-:16. Defendants themselves represented at oral argument that the decision to use banding was made by the Civil Service Commission in conjunction with the department of human resources. Id. 17:10-:14 (stating that "the Civil Service Commission and the Department of Human Resources met in closed session with the City Attorney's office to discuss the certification rule. A decision was made"). This is consistent with the process outlined in the 2007 recruitment notice, which stated that a "broader certification rule [e.g., banding] may not be used until the Human Resources Director is instructed by the Civil Service Commission to do so." Hofmann Decl., Ex. A, at 2.

The question of whether or not an official is a final policymaker under § 1983 is a question of state law. McMillian v. Monroe County, 520 U.S. 781, 786 (1997). "[U]nder California law, a city's Charter determines municipal affairs such as personnel matters." Hyland v. Wonder, 117 F.3d 405, 414 (9th Cir. 1997) (citing City and County of San Francisco v. Patterson, 202 Cal. App. 3d 95, 102 (1988)). "The Charter of the City and County of San Francisco makes clear that the San Francisco [Civil Service Commission] is the final policymaker with respect to employment matters." Schiff v. City & Cnty. of San Francisco, 816 F. Supp. 2d 798, 812 (N.D. Cal. 2011) (citing S.F. Charter §§ 10.100-.101), aff'd, 528 Fed. App'x 743 (9th Cir. 2013). Thus, in light of

13

1 Plaintiffs' evidence and Defendants' concession that the Civil
2 Service Commission was responsible for the January 2008 decision
3 to adopt banding, Defendants are not entitled to summary judgment
4 on Plaintiffs' Monell claims.

   C. Qualified Immunity

6 Defendants contend that Gascon and Godown are entitled to
7 qualified immunity.

8 The defense of qualified immunity protects "government
9 officials . . . from liability for civil damages insofar as their
10 conduct does not violate clearly established statutory or
11 constitutional rights of which a reasonable person would have
12 known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This
13 rule protects "'all but the plainly incompetent or those who
14 knowingly violate the law'" and ensures that defendants are not
15 found liable for holding reasonable, but mistaken, beliefs about
16 the facts or about what the law requires in any given situation.
17 Saucier v. Katz, 533 U.S. 194, 202 (2001). The threshold question
18 in qualified immunity analysis is whether the facts alleged,
19 viewed in the light most favorable to the party asserting the
20 injury, show that the officer's conduct violated a "clearly
21 established" right. Id. at 201. "The relevant, dispositive
22 inquiry in determining whether a right is clearly established is
23 whether it would be clear to a reasonable officer that his conduct
24 was unlawful in the situation he confronted." Id. at 202.

25 Applying this standard to the present case, the Court finds
26 that Gascon and Godown are not entitled, as a matter of law, to
27 qualified immunity. Plaintiffs have presented sufficient evidence
28 to support an inference that Gascon and Godown refused to promote

14

them because of their race. See Hofmann Decl., Ex. I. Federal law has long prohibited state actors from engaging in such conduct when making employment decisions. Hazelwood Sch. Dist. v. United States, 433 U.S. 299, 310 n.15 (1977) (recognizing that "a public employer even before the extension of Title VII in 1972 was subject to the command of the Fourteenth Amendment not to engage in purposeful racial discrimination"). Accordingly, if their decisions were racially discriminatory, it would not have been reasonable for Gascon or Godown to believe that such conduct was lawful at the time they made the relevant hiring decisions. See Lowe v. City of Monrovia, 775 F.2d 998, 1011 (9th Cir. 1985) (rejecting qualified immunity argument because "it was well established that [the plaintiff] had a constitutional right not to be refused employment as a police officer because of her race or sex").

The City and County is not entitled to qualified immunity here either. The Supreme Court has made clear that municipalities are not entitled to qualified immunity based on the good-faith decisions of their officers. Owen v. City of Independence, 445 U.S. 622, 650 (1980) ("Our rejection of a construction of § 1983 that would accord municipalities a qualified immunity for their good-faith constitutional violations is compelled both by the legislative purpose in enacting the statute and by considerations of public policy."); Eng v. Cooley, 552 F.3d 1062, 1064 n.1 (9th Cir. 2009) ("Qualified immunity is not available, however, to municipalities or individuals in their official capacities.").

In sum, the chiefs are not entitled to qualified immunity for their allegedly discriminatory hiring decisions and the City and

15

1 County is not entitled to qualified immunity for its decision to
2 adopt banding.
3 II. Plaintiffs' Cross-Motion for Partial Summary Judgment
4     Plaintiffs do not clearly identify the specific claims, or
5 parts of claims, on which they seek partial summary judgment. See
6 Fed. R. Civ. P. 56(a) ("A party may move for summary judgment,
7 identifying each claim or defense -- or the part of each claim or
8 defense -- on which summary judgment is sought." (emphasis
9 added)).  They assert that "the Court should grant partial-summary
10 judgment in Plaintiffs' favor, and issue a declaration that the
11 practice of banding results on SFPD exams is unlawful and
12 permanently enjoin the practice."  Docket No. 86, Pls.' Opp. &
13 Cross-Mot., at 14.  However, they failed to state any claims for
14 declaratory relief in their complaint and fail to address any of
15 the requirements for injunctive relief in their cross-motion.
16 More importantly, they conceded at oral argument that the practice
17 of banding is not illegal.  June 27, 2013 Hrg. Tr. 6:19-:21; see also
18 Officers for Justice, 979 F.2d at 728 ("Today we hold that the banding
19 process is valid as a matter of constitutional and federal law.").
20 Accordingly, it is not clear exactly what relief they seek to
21 obtain with their cross-motion.
22     In any event, Plaintiffs are not entitled to summary judgment
23 on any of their claims for the same reason that Defendants are not
24 entitled to summary judgment: namely, several disputes of material
25 fact remain.  Although Plaintiffs have presented sufficient
26 evidence to support an inference that the City engaged in
27 disparate treatment, their evidence is not sufficient to show that
28 the City did, in fact, engage in disparate treatment.  Similarly,

16

while Plaintiffs have presented sufficient evidence to support an inference that they were qualified to serve as SFPD captains, they have not presented sufficient evidence to meet their ultimate burden of persuasion on that point. See Hunt v. Cromartie, 526 U.S. 541, 553 (1999) ("Summary judgment in favor of the party with the burden of persuasion, however, is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."). What's more, Defendants have presented sufficient evidence to create a material dispute of fact as to that issue.

Plaintiffs themselves acknowledge in their brief that several disputes of material fact remain regarding Defendants' underlying motives. See, e.g., Pls.' Opp. & Cross-Mot. 16 ("Plaintiffs have presented evidence of racial discrimination by the City and the Chiefs that at least raises a dispute of material fact."); id. at 18 ("Plaintiffs have raised a disputed fact that the City's stated reasons for not promoting them were pretextual."); id. at 19 n.13 ("Clearly, whether the promotions made after the City decided to use banding were designed to promote diversity is a dispute of material fact."). Accordingly, they are not entitled to summary judgment.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (Docket No. 80) is DENIED and Plaintiffs' motion for partial summary judgment (Docket No. 86) is DENIED. The Court

//

//

//

17

1  will hold a pretrial conference at 2:00 p.m. on April 23, 2014 in
2  Courtroom 2.
3       IT IS SO ORDERED.
4
5  Dated: 12/20/2013                
                                    CLAUDIA WILKEN
6                                   United States District Judge